RECEIPT # 49173
AMOUNT $ 150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 7-26-03

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

CRONIN-STONE INDUSTRIES, LTD. )
and its subsidiary, CRONIN-STONE )
SOLAR & WIND POWER CO. )
)
Plaintiff )
)
vs. )
)
GENERAL ELECTRIC COMPANY )
)
Defendant )

**03-11405 RWZ**

MAGISTRATE JUDGE _____

## COMPLAINT AND JURY CLAIM

NOW COME Cronin-Stone Industries, Ltd. and its wholly owned subsidiary, Cronin-Stone Solar & Wind Power Co., the plaintiffs in the above-entitled action, and hereby state as follows:

### Statement of Subject Matter Jurisdiction

1. This is an action for unfair and deceptive business practices, civil conspiracy and tortuous interference with contractual relations by one corporation against another.

2. The unfair business practices include unfair and deceptive practices in trade and commerce, in violation of M.G.L. Chapter 93A, Section 1, et seq., and tortuous conduct that is unlawful under the laws of the Commonwealth of Massachusetts.

3. The unlawful practices were either committed in the Federal District of Massachusetts, this Court's judicial district, or have caused damage to the plaintiff in this District and in other districts throughout the United States.

4. This Court has Jurisdiction over this matter because the parties to this action are of diverse citizenship within the meaning of 28 U.S.C. 1332.

5. The amount in controversy is three hundred million dollars ($300,000,000.00).

## Parties

6. Plaintiffs Cronin-Stone Industries, Ltd. and its wholly owned subsidiary, Cronin-Stone Solar & Wind Power Co. (hereinafter referred to together as "Cronin-Stone"), are corporations and/or companies duly organized under the laws of the Commonwealth of Massachusetts, and have a usual place of business located at 616 Hyde Park Avenue, Roslindale, Boston, Massachusetts.

7. Defendant General Electric Company (hereinafter referred to as "GE") is a foreign corporation duly registered to do business in the Commonwealth of Massachusetts, has a principal place of business at 1 River Road, Schenectady, New York, and has a local agent in Massachusetts of CT Corporation, 101 Federal Street, Boston, Massachusetts.

8. Cronin-Stone is small, local business that was organized to promote, market and sell renewable energy products, infrastructure, hardware and equipment, including but not limited to modern wind energy converters, in the United States.

9. GE is a large, foreign corporation that does business in many fields, including manufacture of systems for generation of power and electricity, has several business units, including GE Power Systems, and has, over the many years of its existence, acquired and/or merged with many other companies.

## Facts Common to All Counts

10. On or around January 7, 1999, Cronin-Stone entered into an agreement (hereinafter referred to as "the contract") with DeWind Technick GmbH, a/k/a DeWind AG (hereinafter referred to as "DeWind"), a German company that manufactures wind energy converters.

11. The original agreement between Cronin-Stone and DeWind was for Cronin-Stone to market and sell DeWind's products as DeWind's exclusive agent for the United States, with an initial emphasis on the New England states of the United States and to otherwise act as DeWind's exclusive agent for the United States.

12. On or about June 2, 1999, in a subsequent clarification and modification to the contract, Cronin-Stone and DeWind confirmed Cronin-Stone's marketing and sales region as the entire

United States so that Cronin-Stone would market and sell DeWind's products in the entire United States, and to otherwise act as DeWind's exclusive agent for the United States. This subsequent modification to the contract authorized Cronin-Stone to contract with sub-agents for the sale of DeWind products.

13. The term of the contract was for four years, and was automatically renewable for successive four year periods if Cronin-Stone's efforts produced a profit for DeWind.

14. The contract between Cronin-Stone and DeWind contained discounts off the list prices for DeWind wind energy converters such that Cronin-Stone would earn $100,000 in commissions for each 1 megawatt or larger wind energy converter sold at full list price and $40,000 in commission for each 500 kilowatt or 600 kilowatt wind energy converter sold at full list price; DeWind promised in its contract with Cronin-Stone to provide Cronin-Stone with prices at least equal to the best prices offered to any and all other international representatives of DeWind; and Cronin-Stone was obligated to bear all costs associated with its time, energy and efforts to sell DeWind wind energy converters.

15. During the term of the contract, Cronin-Stone did perform all of its obligations under the contract, including vigorously and aggressively educating the community about wind power and about DeWind's products specifically, networking in the power community on behalf of DeWind, and marketing DeWind's products, to the exclusion of any other manufacturer with whom Cronin-Stone could have had business dealings but for the contract.

16. In performing its obligations under the contract, Cronin-Stone at all times acted in good faith and spent a great deal of its resources, including time and money, in furtherance of its obligations under the contract.

17. During the term of the contract, Cronin-Stone satisfied all conditions precedent to DeWind's performance under the contract.

18. During the term of the contract, Cronin-Stone's efforts and performance did result in verbal agreements and understandings for sales of DeWind's wind turbines to purchaser customers in the United States.

3

19. During the term of the contract, Cronin-Stone became aware of a patent, held by a third party, for a variable speed converter for wind turbine systems ("the patent").

20. Initially, upon making Cronin-Stone aware of the existence of the patent, DeWind made assurances to Cronin-Stone that its converter system was sufficiently different from the patented system that any claims by the holder of the patent would have been without merit.

21. In or around the year 2000 and at various other times, GE, through its business unit GE Power Systems, entered into negotiations with DeWind for GE to wholly purchase and acquire DeWind.

22. In or around August, 2000, during the process of GE's negotiation for the acquisition of DeWind, Cronin-Stone made GE aware of the existence of the contract, that Cronin-Stone was the exclusive sales agent for DeWind's products, and that GE should include Cronin-Stone in communications relative to DeWind, its exclusive principal, and to GE's negotiations to purchase DeWind.

23. During the process of negotiating for the acquisition of DeWind, GE had actual knowledge or was otherwise on notice of the existence of the contract.

24. Despite being aware of the contract, GE failed to communicate with Cronin-Stone in any way relative to DeWind.

25. After GE began its negotiations to wholly acquire DeWind, DeWind and GE contended that the patent was, in fact, a barrier to DeWind's entrance into the sales market for wind turbines in the United States, and therefore, was a barrier to Cronin-Stone's sales of DeWind's products in the United States.

26. During GE's negotiation for the purchase of DeWind, GE and DeWind were both aware that the patent was not, in fact, a true barrier to DeWind's entrance into the United States market for its wind energy converter systems.

27. Instead of DeWind's making reasonable efforts to enter the United States market, and therefore permitting Cronin-Stone to sell DeWind's wind energy converter systems in the United States pursuant to the terms of the contract, GE and DeWind intentionally and knowingly

4

conspired to frustrate the contract, to refrain from DeWind's use of reasonable efforts and use of available technology to enter the United States market, until after the end of the term of the contract.

28. While conspiring to frustrate the contract, GE and DeWind continued to represent that the patent posed a true barrier to DeWind's entrance into the United States market.

29. GE's and DeWind's representations relative to the nature of the barrier that the patent posed to DeWind's entrance into the United States market during the term of the contract were false when made.

30. GE and DeWind knew that their representations relative to the nature of the barrier that the patent posed to DeWind's entrance into the United States market during the term of the contract were false when made.

31. During the process of negotiating for the acquisition of DeWind, GE made its offer for the purchase of DeWind conditional on DeWind's termination of the Cronin-Stone contract.

32. During the process of negotiating for the acquisition of DeWind, GE did intentionally and knowingly induce DeWind to breach the Cronin-Stone contract with DeWind.

33. During the process of negotiating for the acquisition of DeWind, GE did knowingly and intentionally employ improper means, methods and/or motive to induce DeWind to breach the contract, including:

   a. Misrepresentation as to the extent and nature of DeWind's ability to enter the United States market despite the existence of the patent;

   b. Misrepresentation as to Cronin-Stone's ability to assist DeWind to overcome such patent claims;

   c. Violation of GE's own policies relative to sales and marketing contracts of its prospective acquisitions;

   d. Disparagement relative to Cronin-Stone's ability to effectively represent DeWind's interests in the United States.

34. GE's improper inducement of DeWind to breach the contract caused DeWind to fail to support Cronin-Stone with prospective purchasers of the DeWind wind energy converter systems.

35. Despite Cronin-Stone's offers to DeWind to assist DeWind in overcoming any potential claims based on patent infringement, GE's improper inducement of DeWind to breach the contract caused DeWind to fail to support Cronin-Stone in such efforts.

36. GE's improper inducement of DeWind to breach the contract caused DeWind to breach the covenant of good faith and fair dealing implied in every contract in Massachusetts.

## Count I – Massachusetts Consumer Protection Act

37. Plaintiffs restate, reallege, and incorporate by reference herein all allegations contained in paragraphs one through thirty-six of this Complaint.

38. At all times herein relevant, GE was engaged in trade, commerce and business, within the meaning of M.G.L. Chapter 93A, Section 11.

39. At all times herein relevant, Cronin-Stone was engaged in trade, commerce and business, within the meaning of M.G.L. Chapter 93A, Section 11.

40. GE's acts and practices, as described in this complaint, were unfair and deceptive, and violated the Massachusetts Consumer Protection Act, M.G.L. Chapter 93A.

41. GE's unfair and deceptive acts, as described above, took place in the conduct of trade or commerce.

42. GE has acted unreasonably and in bad faith.

43. As a direct cause and result of GE's violation of the Massachusetts Consumer Protection Act, M.G.L. Chapter 93A, the plaintiffs suffered great economic harm and loss of reputation, and has lost the benefits of the contract, including but not limited to lost commissions, fees and profits from aborted sales of DeWind's wind energy converter systems.

WHEREFORE, the plaintiffs seek judgment against the defendant in the amount of $300,000,000.00 or the damages to be determined by a jury or the Court, and multiple damages, plus interest, and reasonable attorneys fees and costs.

## Count II – Intentional Interference with Contractual Relations

44. Plaintiffs restate, reallege, and incorporate by reference herein all allegations contained in paragraphs one through forty-three of this Complaint.

45. GE knowingly induced DeWind to breach the contract, and did so by employment of improper and unlawful means.

46. As a direct cause and result of GE's intentional interference with Cronin-Stone's contractual relations, the plaintiffs suffered great economic harm and loss of reputation, and has lost the benefits of the contract, including but not limited to lost commissions, fees and profits from aborted sales of DeWind's wind energy converter systems.

WHEREFORE, the plaintiffs seek judgment against the defendant in the amount of $300,000,000.00 or the damages to be determined by a jury or the Court, and multiple damages, plus interest, and reasonable attorneys fees and costs.

## Count III – Civil Conspiracy

47. Plaintiffs restate, reallege, and incorporate by reference herein all allegations contained in paragraphs one through forty-six of this Complaint.

48. During the years 2000 through 2002, and at various and diverse other times, GE did conspire, combine, and agree with DeWind to accomplish an unlawful purpose or a lawful purpose through unlawful means.

49. During the years 2000 through 2002, and at various and diverse other times, GE did conspire, combine, and agree with DeWind for DeWind to breach its contract with Cronin-Stone, and to perpetrate misrepresentation on Cronin-Stone.

50. During said times, GE and/or DeWind conspired and combined to misrepresent to Cronin-Stone the extent and true nature of the barrier to DeWind's entrance into the United States market.

51. During said times, GE and DeWind conspired to interfere with the contract.

52. GE's and DeWind's conspiracy caused Cronin-Stone to incur a great amount of economic loss.

7

WHEREFORE, the plaintiffs seek judgment against the defendant in the amount of $300,000,000.00 or the damages to be determined by a jury or the Court, and multiple damages, plus interest, and reasonable attorneys fees and costs.

**PLAINTIFFS CLAIM TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

For the plaintiff,

_____
Sol J. Cohen
BBO# 630776
COHEN & SALES
43 Thorndike Street
Cambridge, MA 02141
(617) 621-1151

_____
John P. LeGrand
BBO# 550185
JOHN P. LEGRAND & ASSOCIATES, P.C.
375 Broadway, Suite 2
Somerville, MA 02145
(617) 623-3001

8